# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK PARKINSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 23-4004 |
| vs. | : | |
| | : | COMPLAINT |
| TRACEY L. GORDON, *individually* and | : | |
| as Register of Wills of Philadelphia, | : | |
| | : | |
| and | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Patrick Parkinson, for his Complaint, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(a)(3)-(4) (civil rights), 1367 (supplemental jurisdiction); and 42 U.S.C. § 1983 (civil action for deprivation of rights).

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.   Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

3.      Plaintiff, Patrick Parkinson ("Plaintiff" or "Parkinson"), is an adult individual and citizen of Pennsylvania, residing in the City of Philadelphia.

4.      Defendant, Tracey L. Gordon ("Defendant Gordon" or "Gordon"), is an individual who at relevant times has served, and presently serves, as the Register of Wills for the City and County of Philadelphia, Pennsylvania, with an office at City Hall in Philadelphia, Pennsylvania.

5.      Defendant, City of Philadelphia (sometimes referred to as "the City"), is an independent municipality and/or political subdivision of the Commonwealth of Pennsylvania, with offices in Philadelphia, Pennsylvania.

6.      Gordon and the City are sometimes referred to collectively as "Defendants".

7.      At relevant times, Gordon acted under the color of state law and within the scope of her authority and employment with the City as Register of Wills, an elected municipal official position.

8.      At relevant times, the City acted under the color of state law.

9.      At relevant times, Defendants acted by and through their employees, agents, workers, and/or ostensible agents.

### FACTS

10.      On or about January 1, 2016, Plaintiff was hired by the City to work as an administrative deputy in the City's office of the Register of Wills.

11.      The Philadelphia Register of Wills is an elected position, which serves as the head of the municipal department performing the functions of both the Register of Wills and the Clerk of the Orphan's Court for the City and County of Philadelphia.

12.      In November 2019, Gordon was elected to become the Philadelphia Register of Wills and assumed office on January 6, 2020.

13.      In the May 2023 municipal primary election, Gordon lost her bid to be the Democratic Party-nominated candidate in the upcoming November 2023 general election.

14.     Gordon's present term of office is scheduled to expire on January 2, 2024.

15.     At relevant times, Gordon was a policymaking official for the City with respect to, among other things, the hiring, firing, retention and personnel decisions concerning City employees working in the office of the Register of Wills.

16.     Plaintiff did not hold a policy-making position with the City or Register of Wills.

17.     As an administrative deputy for the Register of Wills, Plaintiff's employment was an administrative position, in which Plaintiff performed routine administrative duties, such as handling and processing correspondence in the office, and assisting the office in performing its functions in the Inheritance Tax and Archive Department.

18.     During his six years and four months of employment with the Register of Wills office, Plaintiff was never the subject of disciplinary action or reprimand regarding his work performance. Plaintiff's performance exceeded all requisite expectations for his position.

19.     As part of his employment, Plaintiff was paid a salary, along with health insurance benefits, retirement plan benefits including a pension, and other job-related benefits.

20.     During his employment, Plaintiff and other employees in the office were continually pressured to contribute and donate money to Gordon and her Political Action Committee ("PAC") on behalf of Gordon, and to otherwise promote and advocate for the reelection of Gordon as Register of Wills.

21.     By way of example, in 2021 and 2022, Keasha Trawick, another employee of the Register of Wills, and Gordon continually demanded that Plaintiff support Gordon politically and contribute to Gordon's PAC for her re-election campaign.

22.     Ms. Trawick was a City employee who worked in the Inheritance Department of the Register of Wills, in addition to and while she served in the role of political campaign treasurer for Gordon and her PAC.

23.     By way of example of such continual pressure, in March of 2022, when Ms. Trawick requested Plaintiff to contribute to an upcoming political fundraiser for Gordon, Plaintiff told Ms. Trawick he was not contributing to the campaign. Trawick responded by saying, "well that's a mistake!"

24.     Plaintiff did not want to provide political support for or be associated with Gordon's candidacy for reelection. Plaintiff had come to learn and form the personal opinion and belief that Gordon was ruthless, corrupt, unethical, incompetent and acted in an illegal manner.

25.     After witnessing Gordon's activities as Register of Wills, Plaintiff did not want to be politically affiliated with, associated with, or contribute to or otherwise support Gordon's PAC and her re-election political campaign.

26.     On numerous occasions, Plaintiff refused to contribute financially to Gordon's political campaign in response to her solicitations for political contributions, and declined to advocate to others to provide Gordon political support in the then-upcoming 2023 election.

27.     In March of 2022, Gordon continually and relentlessly badgered Plaintiff to provide his political support and advocacy for Gordon, including her demand that he arrange a personal meeting with Mr. Robert A. Brady ("Chairman Brady"), who was and is the Chairperson of the Philadelphia Democratic Party City Committee.

28.     Plaintiff ultimately succumbed to Gordon's repeated pressure, in fear of losing his job and livelihood, by arranging and facilitating the meeting between Chairman Brady and Gordon

29.    The meeting occurred on or about March 30, 2022, during lunch time, at the Philadelphia Democratic Party City Committee headquarters on Spring Garden Street in Philadelphia.

30.    Defendant Gordon insisted that Plaintiff personally attend the meeting with her and demanded that he support her politically in the meeting.  Along with Chairman Brady, others attending the meeting included William Dolbow, James Harrity, and Register of Wills employee Keith Harris.

31.    The meeting turned to chaos, with Gordon repeatedly yelling at Chairman Brady and arguing about political support for her.

32.    After the meeting, when Plaintiff returned to work at the Register of Wills office in City Hall, Gordon reprimanded and berated Plaintiff for not supporting her with the political party leaders, and not speaking up and standing up for her at the meeting.

33.    Later that same evening, at 9:22 pm, one of Gordon's political supporters and agents, Kevin Price, along with Gordon, sent Plaintiff a text message telling him that Gordon was unhappy with Plaintiff for not speaking up for her at the political meeting with Chairman Brady and other party members.

34.    A printed copy of this written communication, which is also on Gordon's phone as a party to the communications, is attached as "Exhibit A".

35.    This written communication, from Mr. Price and Gordon, was abrasive in delivering Gordon's threats *via* a lengthy text message communication among Gordon, Mr. Price and Plaintiff.

36.    Among the threats are references to Gordon having previously terminated employment of other "ward leaders", with Gordon knowing Plaintiff himself was a Ward Leader in Philadelphia.

37.    Gordon's threats were designed to make clear her demand that Plaintiff must politically support Gordon "or else". Gordon made unmistakably clear her intent to coerce and deny Plaintiff's rights of political association, by adding: ". . . I have cc Tracey [Gordon] on this text message so there is no misunderstanding? It is simple now you are either loyal to Tracey or the Congressman but not both." *See* Exhibit "A".

38.    Gordon made clear, through this written communication from Mr. Price's phone, her anger toward Plaintiff because he did not support and advocate her political position and candidacy in the meeting with Democratic Party Chairman Brady. Gordon was angry with Plaintiff because, in her view, he "never tried to protect her" and support her political candidacy in the meeting. *See* Exhibit "A"

39.    Gordon exerted pressure on Plaintiff to "fix" her lack of political support from the Party, by also telling Plaintiff, in the same written message, that other political influencers "wanted you [Plaintiff] terminated", after which Gordon demanded, "how do we fix this? can it be fix?". *See* Exhibit "A".

40.    After receiving these threats to his continued employment, which followed Gordon having, earlier that same day, reprimanded and berated Plaintiff after the meeting, Plaintiff became overwhelmed with anxiety and fear for losing his job and livelihood for his family, to the point that Plaintiff became sick and could not sleep the entire night.

41.    Gordon expressed anger and animus at Plaintiff for not "protect[ing]" and supporting her political candidacy. This, in conjunction with being told, "that's a mistake!" by

Gordon's PAC treasurer when Plaintiff refused to contribute to Gordon's campaign, as well as Gordon's pattern of retaliating against other employees and terminating other Ward Leaders she viewed as non-supportive, exacerbated the pressure and Plaintiff's fear that exercising his rights jeopardized his job and livelihood upon which he and his family depended.

42.     On the following day, March 31, 2022, overwhelmed by the pressure, anxiety and fear caused by Gordon's actions and threats, Plaintiff emailed the Register of Wills Human Resources Deputy, Charmaine Collins, to inform her that he was not able to come to work because he was sick and was unable to sleep as a result of the matter.

43.     Plaintiff told Ms. Collins that he felt his job was threatened, including through the threatening communications from Gordon and Mr. Price after he did not support and advocate for her candidacy during the political meeting with Chairman Brady and others.

44.     Plaintiff told Ms. Collins that the threats in the lengthy text message caused him stress, sleeplessness and made him sick to his stomach.

45.     Ms. Collins asked for a copy of the text message.

46.     In response, Plaintiff told Ms. Collins that Gordon had it. He told Ms. Collins to obtain it from Gordon since it was on her phone. Plaintiff feared he would suffer further repercussions from Gordon if he gave a copy of the text message to Human Resources.

47.     Plaintiff continued to experience severe emotional distress, mental anguish, fear, abdominal discomfort, sleeplessness and anxiety, so much so that he was required to stay at home and use up sick time and paid time in the ensuing days and weeks, to avoid the threatening hostile office environment that worsened his anxiety and emotional distress and fears due to Defendant Gordon's hostilities and threats.

48.    In the ensuing days and weeks, Plaintiff informed the office (Ms. Collins) that he was unable to work due to his health condition.

49.    Plaintiff advised Ms. Collins that he needed to take medical leave due to his condition and, about a week or so after the incident, requested her to provide him whatever paperwork he would need to complete for taking leave under the Family Medical Leave Act ("FLMA").

50.    Ms. Collins acknowledged Plaintiff's request for FMLA leave.

51.    However, when he later called back to request the documents be mailed to his home so that he could take them to his doctor, he received no response.

52.    He then called a different department within the office and was transferred to the Human Resources Department and requested that the paperwork be sent to his home.

53.    He received no response. As a result, to the extent there was any usual process for confirming FMLA leave, Plaintiff was denied the ability to complete whatever paperwork would have been utilized to do so.

54.    A short time thereafter, on or about April 22, 2022, while he was on leave and unable to work due to his medical condition of mental and emotional distress, Plaintiff received a written letter stating that he was terminated effective immediately.  *See* Exhibit B" is the April 22, 2022 letter from Gordon to Plaintiff.

55.    Plaintiff received no prior notice, no prior warning of poor performance, no prior concerns about any employment duties or attendance, and no opportunity to address any questions Defendants may have had, if any, about his employment, or status of his attendance or leave time.

56.    The first and only communication was the April 22, 2022 letter signed by Gordon, stating that Plaintiff was terminated effective immediately.

57.     Plaintiffs' worst fears became reality by Defendants abruptly terminating his employment while he was on medical leave, a leave that became necessary because of Gordon's threats and continual pressures to support her political candidacy.

58.     Gordon and the City, to disguise their misconduct, resorted to deception and falsehoods in concocting a false "reason" for terminating Plaintiff's employment. In the April 22, 2022 letter, Defendants stated, as the pretextual reason, that Plaintiff "abandoned" his job.

59.     Defendants' stated reason for terminating Plaintiff was false and pretextual, including because, among other things: (a) he did not abandon his job; (b) Plaintiff's sick and vacation time were not exhausted; (c) he had requested and attempted to exercise his rights to medical leave; (d) he had kept Ms. Collins continually informed of his need to avoid the office for the time being due to his continuing medical condition of emotional and mental distress; and (d) Defendants expressly acknowledged and knew Plaintiff had requested FMLA leave, and they purposely did not follow up with him to process whatever paperwork may be needed.

60.     Plaintiff's employment was terminated for retaliatory and political reasons because (a) he did not support and advocate for Gordon's political campaign, including his refusal to make monetary contributions, and his failure to advocate and speak up for Gordon with political leaders, including at the meeting with Chairman Brady, (b) Gordon was angry with Plaintiff because she believed Plaintiff did not "protect" and support her politically at the March 30, 2022 meeting with the Democratic Party Chairman, and (c) Plaintiff exercised and attempted to exercise his rights under law to medical leave, including under the FMLA, 29 U.S.C. §2601 et seq.

61.     Plaintiff is one of many employees Gordon has similarly harassed and threatened to obtain political support, and retaliated against after they refused to or stopped supporting (including financially) Gordon's reelection campaign.

62.    The following are examples further establishing Defendants' policies, practices, custom and patterns of such ongoing conduct, as confirmed by other employees who have been terminated from employment and subjected to retaliation at the office of the Register of Wills under Gordon's control and direction:

(a) According to a complaint filed in this Court, Gordon required former employees, including Thomas Campion who has since been terminated, to support and contribute money to her political campaign (*Campion v. City of Philadelphia.*, No. 23-cv-2873-GJP);

(b) According to Mr. Campion, there was "immense pressure forcing employees to donate to [Gordon's] campaign needs", and that Gordon "cultivated an environment that was discriminatory and retaliatory"; *Id.*

(c) According to former employee Nicholas Barone, he was terminated because he refused to support and contribute to Gordon's political fundraising (*Barone v. Gordon*, No. 2-23-cv-2821-MSG)

(d) According to former employee Mark Wilson, he was terminated after opposing mandatory contributions to Gordon's political campaign (*Wilson v. Gordon*, No. 23-cv-1814-JDW).

(e) According to Mr. Wilson, "[Gordon] did not casually ask for support in her campaign on a voluntary basis. Instead, she demanded and pressured every employee under her supervision to participate in making contributions to her campaign (numerous times throughout their tenure and on an ongoing basis. She exerted a constant barrage of pressure upon all employees through supervisors and high-level management." *Id.*

(f) According to former employee Malik Boyd, he was terminated because he "did not publicly support Gordon's reelection campaign or make any contributions to Gordon's reelection campaign." *Boyd v. Gordon*, No. 23-cv-3640-JDW).

(g) According to Mr. Boyd, Gordon "harassed, demeaned, and ultimately terminated the employment of Boyd based on Boyd's refusal to support Gordon in Gordon's reelection campaign including publicly supporting Gordon, contributing to Gordon's reelection campaign, and voting for an alternate candidate . . ." *Id.*

63.    Further, at least one other employee has claimed retaliation and interference by Gordon for having exercised and attempted to exercise rights to medical leave.

64.    Gordon, acting under color of state law and in her capacity as the Philadelphia Register of Wills, along with the City, engaged in a pattern, practice and/or custom of harassing and pressuring employees and terminating those who refused to support her politically, including through monetary contributions to her political campaign.

65.    The City and its Register of Wills office had a pattern, practice and/or custom of requiring employees to contribute to the political campaign of the elected Register of Wills.

66.    Many employees at the Register of Wills office were subject to solicitation and pressure to contribute to the political campaigns of the sitting Register of Wills. It was a clear custom of the City that was practiced year after year in the Register of Wills office, including with the knowledge of the City.

67.    It was well-known among the City employees of the Register of Wills office that their continued job security was contingent on contributing to the sitting Register of Wills' political campaign.

68.     Plaintiff's employment was terminated in retaliation for his decision to not financially contribute to Gordon's political campaign, and for his personal political beliefs and his refusal to support Gordon's candidacy, financially and otherwise, in violation of his federal Constitutional rights to free speech and association.

69.     Plaintiff's employment was terminated for retaliatory reasons also because he exercised and attempted to exercise his rights to medical leave, including under the FMLA, 29 U.S.C. §2601 *et seq.* Defendants otherwise interfered with his exercise and attempts to exercise his rights to FMLA medical leave.

70.     As a result of the deliberate, unlawful, bad faith and malicious actions of Defendants, Plaintiff has suffered a loss of employment, wages, salary, employment benefits, pension rights, raises, earnings and earnings potential.

71.     As a result of the deliberate, unlawful, bad faith, and malicious actions of Defendants, Plaintiff has suffered harm to his reputation in the community of his peers.

72.     As a result of the deliberate, unlawful, bad faith and malicious actions of Defendants, Plaintiff has suffered emotional distress, humiliation, sleeplessness, the loss of self-esteem, a loss of life's pleasures, and a painful diminution of his ability to provide himself and his family with earned rewards in his chosen employment and profession.

## COUNT I
## 42 U.S.C. §1983
## VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS
## AGAINST DEFENDANT TRACEY GORDON

73.     Plaintiff incorporates the preceding paragraphs as though fully set forth here.

74.     At relevant times, Gordon was acting under the color of state law in her capacity as the Philadelphia Register of Wills, an elected public office.

75.    At relevant times, Plaintiff was employed as an administrative deputy with the Register of Wills office of the City, a public municipal entity.

76.    Plaintiff's position involved administrative functions and did not require political affiliation.

77.    Plaintiff refused to provide his political support, including through financial contributions, for Gordon's political campaign in response to her and her political operatives' repeated demands.

78.    Plaintiff's decision to not support or contribute to Gordon's political reelection, and to instead act according to his own chosen personal political beliefs and opinions, is constitutionally protected conduct pursuant to his right to freedom of expression and association under the First Amendment of the United States Constitution.

79.    Plaintiff's exercise of his constitutional rights was a substantial and/or motivating factor in Gordon's retaliatory decision to terminate Plaintiff's employment.

80.    Defendant Gordon terminated Plaintiff's employment because of and in retaliation for exercising his constitutional right to choose not to support Gordon's political candidacy, including through financial contributions, and to otherwise deprive Plaintiff of his right to freely exercise his constitutional rights under the First Amendment without interference by Gordon.

81.    Gordon's conduct deprived Plaintiff of and interfered with his First Amendment right to exercise freedom of expression and political association.

82.    Plaintiff's First Amendment right to free expression and political association was clearly established at all relevant times, up to and including the point in time at which Gordon terminated Plaintiff's employment in violation of his constitutional rights. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 355-56 (1976) ("The threat of dismissal for failure to provide [political] support

unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise."); *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 273 (3d Cir. 2007) ("[T]he First Amendment protects an employee's failure to engage in any political activity whatsoever."); *Assaf v. Fields*, 178 F.3d 170, 174 (3d Cir. 1999); *Cullen v. New York State Civ. Serv. Comm'n*, 435 F. Supp. 546, 552 (E.D.N.Y. 1977) ("[D]enial of employment or promotion may not be conditioned on the making of a financial contribution to a political party. To do so is a severe and intolerable infringement of the right of association.").

83.     Gordon knew and/or should have known that Plaintiff's rights to free expression and political association were clearly established, and she knew and/or should have known that her conduct violated Plaintiff's rights.

84.     Gordon acted with malice and/or reckless indifference in violating Plaintiff's federally protected rights, including but not limited to, the following:

    a. Defendant's conscious desire to violate Plaintiff's First Amendment rights, of which Defendant was aware at all relevant times;

    b. Defendant's conscious desire to injure Plaintiff by terminating his employment in a manner Defendant knew to be unlawful in violation of their First Amendment rights;

    c. Defendant's reckless and/or callous disregard for Plaintiff's First Amendment right to exercise freedom of expression and political association by choosing not to make financial contributions and/or support Defendant's political campaign without fear of being terminated from his employment with a public entity; and/or

    d. Defendant's express and overt anger toward Plaintiff for not supporting her political candidacy.

85.     Plaintiff is entitled to an award of punitive damages based on Gordon's malicious and outrageous conduct toward Plaintiff and others, in violation of federally protected constitutional rights and other laws.

86.     As a result of Gordon's actions under the color of state law, Plaintiff suffered deprivation of his constitutional rights, emotional distress, mental anguish, sleeplessness, damage to reputation, embarrassment, humiliation, and financial losses, including but not limited to lost wages, salary, employment benefits, pension rights, raises, earnings and earnings potential.

**COUNT II**
**42 U.S.C. §1983**
**VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**
**AGAINST DEFENDANT CITY OF PHILADELPHIA (*MONELL* CLAIM)**

87.     Plaintiff incorporates the preceding paragraphs as though fully set forth here.

88.     The City, through its Register of Wills, had and continues a policy, practice or custom of coercing Register of Wills employees to provide their political support, financially and otherwise, to the sitting Register of Wills under threat of losing their jobs and adverse treatment in their employment.

89.     This policy, practice or custom includes punishing and terminating, and threatening to punish and retaliate against, Register of Wills employees, for refusing to support and contribute politically and/or financially to Gordon's political campaign, in a pattern of unlawful conduct that violates and interferes with First Amendment rights to free expression and political association.

90.     This policy, practice or custom has been evidenced and confirmed by actions taken against a number of Register of Wills employees, including but not limited to Nicholas Barone, Malik Boyd, Mark Wilson and Thomas Campion.[1]

91.     The City's practice of retaliating against Register of Wills employees and interfering with their rights for refusing to support and contribute to the Register of Wills' political

---

[1] *See Nicholas Barone v. Tracey L. Gordon, individually and City of Philadelphia*, Case No. 2:23-cv-02821-MSG; *Malik Boyd v. Tracey L. Gordon, Office of the Register of Wills for the City of Philadelphia, City of Philadelphia*, Case No. 2:23-cv-03640-JDW; *Mark Wilson v. City of Philadelphia and Tracey Gordon*, individually and City of Philadelphia, Case No. 2:23-cv-01814-JDW; and *Campion v. City of Philadelphia*, Case No. 23-cv-2873-GJP..

campaigns was so widespread and well-settled that the City's policymaking officials, including but not limited to Gordon, knew it existed and continued the pattern and practice.

92.  The City's practice of retaliating against Register of Wills employees for refusing to give political support, including financial contributions, was so widespread and well-settled as to have the force of law constituting an official policy, practice or custom of the City.

93.  The City's threats and retaliations against Register of Wills employees constitutes an official policy, practice or custom of the City, including because the conduct is deliberately authorized by Gordon, who has official authorized policymaking power with respect to, among other things, the hiring, firing, retention and personnel decisions of City employees at the Register of Wills office.

94.  Gordon's actions were well known institutionally and enforced through various employees of the City, such that the actions constitute an unconstitutional policy, practice or custom of the City.

95.  The City's official policy, practice or custom caused the deprivation of and interference with Plaintiff's First Amendment right to exercise freedom of expression and political association when he was terminated from his position with the Register of Wills because he refused to support and contribute to Gordon's reelection campaign.

96.  The City's actions and inactions constitute conduct for which it is liable to injured persons under what is commonly referred to as *Monell* liability. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

97.  As a result of the City's official policy, practice and/or custom of terminating and interfering with the rights of Register of Wills employees for refusing to contribute to and support Gordon's candidacy and reelection campaign, Plaintiff suffered the deprivation of his

constitutional rights, emotional distress, mental anguish, sleeplessness, damage to reputation, embarrassment, humiliation, and financial losses, including but not limited to lost wages, salary, employment benefits, pension rights, raises, earnings and earnings potential.

## COUNT III
## VIOLATONS OF FAMILY MEDICAL LEAVE ACT ("FMLA") AGAINST DEFENDANTS

98.     Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth here.

99.     As stated in preceding paragraphs of this Complaint, Plaintiff requested leave for medical reasons under the FMLA.

100.    Plaintiff was an eligible employee under the FMLA.

101.    Plaintiff had been employed for at least twelve months.

102.    Plaintiff had at least 1,250 hours of service during his last full year of employment.

103.    Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year.

104.    Based on his tenure of employment and hours of service, Plaintiff was entitled to receive leave for a total of twelve (12) work weeks on a block or intermittent basis.

105.    Plaintiff was terminated after he requested FMLA medical leave, near the time of his request.

106.    Defendants terminated Plaintiff to retaliate against Plaintiff and interfere with Plaintiff's rights under the FMLA.

107.    Defendants unlawfully interfered with, restrained, and denied Plaintiff's exercise of and attempt to exercise his rights provided under the FMLA, 29 U.S.C. §2601, *et seq.*, including by terminating his employment and retaliating against Plaintiff for exercising and attempting to exercise his FMLA rights, and by otherwise discriminating against Plaintiff.

108.    Defendants' conduct and FMLA violations were not in good faith, and they had no reasonable grounds for believing that their acts were not violations of the FMLA.

109.    Defendants are liable to Plaintiff for his damages resulting from their unlawful retaliatory interference with and denial of Plaintiff's FMLA rights, including wages, salary, employment benefits and other compensation denied or lost to Plaintiff because of Defendants violations; interest on all amounts recoverable as damages; liquidated damages equal to the sums recoverable with interest; and costs and counsel fees.

110.    Plaintiff is also entitled to equitable relief as may be appropriate, including employment, reinstatement, and promotion.

## COUNT IV
## WRONGFUL DISCHARGE AGAINST ALL DEFENDANTS

111.    Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth here.

112.    Defendants terminated Plaintiff from his employment because he refused to provide political support, including financial contributions, to Gordon and her reelection campaign, including at the above-referenced March 30, 2022 political meeting.

18

113.    Defendants had no legitimate reason for terminating Plaintiff's employment.

114.    Defendants concocted false reasons for terminating Plaintiff's employment, as stated in Gordon's April 22, 2022 letter. *See* Exhibit "B".

115.    Plaintiff was given no notices or warnings of dissatisfactory job performance.

116.    In demanding political support, including financial campaign contributions, with use of threats of adverse employment actions, Defendants violated Plaintiff's clearly established constitutional rights as set forth by the First Amendment of the United States Constitution.

117.    Defendants conduct also violated various criminal statutes, including 25 P.S. §2374, regarding unlawful political assessments and contributions forbidden by law.

118.    Defendants illegally required and pressured City of Philadelphia Register of Wills employees, including Plaintiff, to pay to keep their jobs. The illegal practice and crime is known as "*macing*". *See* 25 P.S. §2374; *Rose v. Bartle,* 871 F.2d 331, 363, n.53 (3d Cir. 1989) ("[C]onduct constituting macing may rise to the level of generic extortion.").

119.    Plaintiff's conduct violates other criminal statutes, including laws that prohibit extortion, *see* 18 Pa. C.S. § 3923(a)(4), and that otherwise prohibit parties from conducting the affairs of the Register of Wills office as an enterprise through a patten of activities unlawful under federal and state criminal statutes.

120.    Defendants' conduct in violating criminal statutes and depriving Plaintiff of his constitutional rights in their capacity as a governing body, public employer and/or elected official, constitutes a blatant violation of a clear public policy mandate.

121.    Defendants' termination of Plaintiff's employment in violation of clear public policy mandates constitutes a wrongful discharge of Plaintiff's employment.

122.    Defendants acted with willful misconduct in wrongfully terminating Plaintiff's employment and concocting false reasons to disguise their misconduct. Defendants' actions are willful, deliberate, malicious and outrageous.  Plaintiff is entitled to an award of punitive damages.

123.    As a result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered emotional distress, mental anguish, sleeplessness, damage to reputation, embarrassment, humiliation, and financial losses, including but not limited to lost wages, salary, employment benefits, pension rights, raises, earnings and earnings potential.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Patrick Parkinson, respectfully requests that this Court:

(a)    Enter a declaratory judgment that the City's acts, policies, practices, customs and/or procedures complained of in this action violate the rights of Plaintiff as secured to him by federal law and that the City be prohibited from continuing to maintain such unconstitutional policies, practices, customs and/or procedures;

(b)    Award Plaintiff punitive damages recoverable under law, in an amount appropriate to punish Defendants for willful, deliberate, malicious and outrageous conduct, and to deter Defendants and others from engaging in such misconduct in the future;

(c)    Award Plaintiff compensatory damages, including damages for lost income, growth opportunities, and all benefits lost due to the actions of Defendants;

(d)    Award Plaintiff damages for humiliation, emotional distress, mental anguish, sleeplessness, loss of self-esteem, a loss of life's pleasures and loss of his ability to provide himself and his family with the earned rewards of excellence in his chosen profession;

(e)     Award Plaintiff liquidated damages pursuant to law, including 29 U.S.C. §2617(a)(1)(A)(iii), as well as all other damages permitted under 29 U.S.C. §2617;

(f)     Award Plaintiff costs, expenses, disbursements and attorneys' fees;

(g)     Award Plaintiff prejudgment interest;

(h)     Conduct a trial by Jury on all issues so triable; and

(i)     Award Plaintiff such additional relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

OF COUNSEL:
ELLIOTT GREENLEAF, P.C.

/s/ Frederick P. Santarelli
FREDERICK P. SANTARELLI
Identification No. 53901
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA  19422
(215) 977-1000
fpsantarelli@elliottgreenleaf.com


/s/ Daniel J. Savage

SAVAGE LAW, LLC

DANIEL J. SAVAGE
Identification No. 329538
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 310-0510
dsavage@savage-law.com

Counsel for Plaintiff
Patrick Parkinson

Date: October 17, 2023

21